**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
(CHARLESTON DIVISION)

| | | |
|---|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, SOUTH CAROLINA NATIVE PLANT SOCIETY, AMIGOS BRAVOS, NATURAL RESOURCES DEFENSE COUNCIL, SAVANNAH RIVERKEEPER, WATERKEEPER ALLIANCE, | ) ) ) ) ) ) ) | Case No. 2:20-cv-03062-DCN |
| Plaintiffs, | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY AMERICAN** |
| v. | ) ) | **PETROLEUM INSTITUTE AND INTERSTATE NATURAL GAS** |
| ANDREW R. WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) ) | **ASSOCIATION OF AMERICA** |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF INTERESTS...........................................................................3

      A.    API .................................................................................................................3

      B.    INGAA .........................................................................................................3

III.  ARGUMENT ..........................................................................................................5

      A.    The Coalition Is Entitled to Intervene as of Right. ..................................5

            1.    The Motion to Intervene Is Timely. .................................................6

            2.    The Coalition Has a Direct and Recognized Interest in the Final Rule. .......7

            3.    The Coalition's Interests May Be Impaired or Impeded by the Disposition
                  of this Litigation..................................................................................12

            4.    The Current Parties Do Not Adequately Represent the Coalition's
                  Interests. ..............................................................................................14

      B.    Alternatively, the Coalition Should Be Granted Permissive Intervention.............19

      C.    The Coalition Should Be Allowed To File Its Answer After The Federal
            Defendants. .................................................................................................20

IV.   CONCLUSION......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alt v. U.S. E.P.A.*,
    758 F.3d 588 (4th Cir. 2014) ................................................................6

*Am. Farm Bureau Fed'n v. U.S. E.P.A.*,
    278 F.R.D. 98 (M.D. Pa. 2011)...............................................................8

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ..............................................................12

*Back Bay Restoration Found., Ltd. v. United States Army Corps of Engineers*,
    No. 2:19-CV-323, 2019 WL 7817079 (E.D. Va. Sept. 25, 2019) .......................7, 14

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ...............................................................20

*Brody By & Through Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992)...............................................................12

*California v. Bureau of Land Mgmt.*,
    No. 18-cv-00521, 2018 WL 3439453 (N.D. Cal. July 17, 2018) ..........................9

*Chevron, U.S.A. Inc., v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)........................................................................17

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992)................................................................15

*Defenders of Wildlife v. N.C. Dep't of Trans.*,
    281 F.R.D. 264 (E.D.N.C. 2012) ...........................................................14

*Driftless Area Land Conservancy v. Huebsch*,
    No. 20-1350, 2020 WL 4592147 (7th Cir. Aug. 11, 2020) ...............................7

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) ....................................................6, 9, 12, 13

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
    297 F. Supp. 3d 261 (D.P.R. 2017).........................................................21

*Fresno Cty. v. Andrus*,
    622 F.2d 436 (9th Cir. 1980) ..............................................................12

*Ga. River Network v. U.S. Army Corps of Eng'rs*,
  334 F. Supp. 2d 1329 (N.D. Ga. 2003) ...................................................................7

*Georgia v. U.S. Army Corps of Eng'rs*,
  302 F.3d 1242 (11th Cir. 2002) ..........................................................................14

*Georgia v. Wheeler*,
  No. 2:15-cv-00079-LGW-BWC (S.D. Ga. Oct. 10, 2018) (Dkt. 215) ..................18

*Gibraltar Mausoleum Corp. v. Cedar Park Cemetery Ass'n*,
  No. 92 C 5228, 1993 WL 135454 (N.D. Ill. Apr. 29, 1993)..................................21

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) ...............................................................................5

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*,
  321 F. App'x 286 (4th Cir. 2009) .......................................................................13

*Kentuckians for the Commonwealth, Inc. v. Rivenburgh*,
  204 F.R.D. 301 (S.D. W.Va. 2001)......................................................................9

*Marshall v. Meadows*,
  921 F. Supp. 1490 (E.D. Va. 1996) .....................................................................20

*N.C. State Conference of NAACP v. Cooper*,
  332 F.R.D. 161 (M.D.N.C. 2019) ........................................................................12

*N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of New York*,
  516 F.2d 350 (2d Cir. 1975) (per curiam)............................................................9

*NAACP v. New York*,
  413 U.S. 345 (1973)...............................................................................................6

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*,
  545 U.S. 967 (2005).............................................................................................17

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
  564 F.2d 381 (10th Cir. 1977) .............................................................................8

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*,
  646 F.2d 117 (4th Cir. 1981) ..............................................................................12

*North Carolina v. Alcoa Power Generating, Inc.*,
  No. 5:13-CV-633-BO, 2013 WL 12177042 (E.D.N.C. Oct. 29, 2013)..................17

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967).............................................................................6

*Ohio Valley Envtl. Coal., Inc. v. McCarthy*,
  313 F.R.D. 10 (S.D.W. Va. 2015)......................................................................11

*Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*,
  243 F.R.D. 253 (S.D. W.Va. 2007)......................................................................7

Order Denying Mots. to Intervene, *California v. Wheeler*,
  No. 3:20-cv-03005 (N.D. Cal. Aug. 13, 2020) (Dkt. 200).....................................16

*Parker v. Morton*,
  No. 18-00234-KD-B, 2019 WL 1645207 (S.D. Ala. Apr. 16, 2019) ....................20

*PUD No. 1 of Jefferson County v. Washington Department of Ecology*,
  511 U.S. 700 (1994).........................................................................................17

*Matter of Richman*,
  104 F.3d 654 (4th Cir. 1997) ...............................................................................7

*S.C. Coastal Conservation League v. Pruitt*,
  No. 18-CV-330-DCN, 2018 WL 2184395 (D.S.C. May 11, 2018)..........................6

*S.C. Elec. & Gas Co. v. Whitfield*,
  No. 3:18-CV-01795-JMC, 2018 WL 3613932 (D.S.C. July 28, 2018)..................19

*Safety-Kleen, Inc. (Pinewood) v. Wyche*,
  274 F.3d 846 (4th Cir. 2001) .............................................................................12

*In re Sierra Club*,
  945 F.2d 776 (4th Cir. 1991) .............................................................................14

*Sierra Club, Inc. v. EPA*,
  358 F.3d 516 (7th Cir. 2004) .............................................................................18

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993), *abrogated on other grounds by Wilderness
  Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc) ......................7

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ...............................................................................8

*South Dakota v. Ubbelohde*,
  330 F.3d 1014 (8th Cir. 2003) ...........................................................................14

*Spring Constr. Co. v. Harris*,
  614 F.2d 374 (4th Cir. 1980) ........................................................................20, 21

*Stuart v. Huff*,
  706 F.3d 345 (4th Cir. 2013) .............................................................................19

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ...................................................................12

*Teague v. Bakker*,
  931 F.2d 259 (4th Cir. 1991) ...................................................................14

*Texas v. EPA*,
  No. 3:15-cv-00162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170)......................18

*Thomas v. Andino*,
  No. 3:20-CV-01552-JMC, 2020 WL 2306615 (D.S.C. May 8, 2020) ....6

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972)..................................................................................14

*United States v. Albert Inv. Co.*,
  585 F.3d 1386 (10th Cir. 2009) ................................................................13

*United States v. City of Hialeah*,
  899 F. Supp. 603 (S.D. Fla. 1994), *aff'd*, 140 F.3d 968 (11th Cir. 1998)...............21

*United States v. Metro. St. Louis Sewer Dist.*,
  569 F.3d 829 (8th Cir. 2009) ...................................................................20

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
  295 F.3d 1111 (10th Cir. 2002) .................................................................8

*Verizon Pa., Inc. v. Pa. Pub. Util. Comm'n.*,
  No. 08-CV-3436, 2008 WL 11374369 (E.D. Pa. Oct. 23, 2008) ...........17

*WJA Realty Ltd. P'ship v. Nelson*,
  708 F. Supp. 1268 (S.D. Fla. 1989) ........................................................20

**Federal Statutes**

15 U.S.C. § 717f(c)(1)(A)...............................................................................4, 7

33 U.S.C. § 1341(a)(1).................................................................................15, 16

33 U.S.C. § 1341(a)(2).......................................................................................16

33 U.S.C. § 1344..................................................................................................7

**Federal Register**

85 Fed. Reg. 42,210 (July 13, 2020)..................................................................1

85 Fed. Reg. 42,224–25, 42,229 ......................................................................17

85 Fed. Reg. at 42,233–34 ....................................................................................17

**Federal Rules**

Fed. R. Civ. P. 24(a)(2)............................................................................ *passim*

Fed. R. Civ. P. 24(b)(1)(B) ...........................................................................19, 22

Fed. R. Civ. P. 24(c) ........................................................................................20

**Other Authorities**

Domestic Energy Producers Alliance, Comments on Updating Regulations on
    Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22,
    2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0935,
    https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0935 ..........................3

INGAA, Comments on EPA's Proposal to Update Regulations on Clean Water
    Act Section 401 Water Quality Certification, 84 Fed. Reg. 44,080 (Aug. 22,
    2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0918,
    https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0918 ..........................5

Natural Gas Council, Comments on Updating Regulations on Water Quality
    Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21,
    2019), EPA-HQ-OW-2019-0405-0852,
    https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0852
    (Natural Gas Council Comments)...............................................................................3

I.       INTRODUCTION

The Clean Water Act (CWA) uses a "cooperative federalism" approach to achieve its

aims. It carves out complementary roles for federal agencies on the one hand and States and

tribes on the other. CWA section 401 gives each State and tribe an important but limited say in

the licensing of federal projects that could affect water quality. Specifically, federal agencies

cannot license activities that may result in a discharge into waters of the United States until the

State whose waters would be affected by the discharge certifies that the activity will comply with

applicable water-quality requirements or waives the section 401 requirement, either affirmatively

or through inaction. Section 401 authority is powerful—when triggered, State certification or

waiver is an essential requirement for the federally-licensed activity to proceed. But to preserve

the CWA's federal-state balance, that authority is also limited—section 401 only authorizes

States to address water quality, and only within reasonable time limits that can never exceed one

year.

Some States have exceeded these limits. They have improperly used procedural

gimmicks to extend the time the CWA gives them to make certification decisions. And they have

used section 401 to effectively veto projects based on non-water quality considerations, such as

preferences regarding energy policy, which infringes on the federal government's exclusive

authority. These abuses of section 401 have acutely affected the members of American

Petroleum Institute (API) and the Interstate Natural Gas Association of America (INGAA)

(collectively, the Coalition) who routinely seek federal authorizations that require section 401

certification and recently have been subjected to these extra-legal State reviews.

On July 13, 2020, the U.S. Environmental Protection Agency (EPA) published a final

rule that aims to stop these abuses and, for the first time, provides a comprehensive framework

for the implementation of section 401. *See* Clean Water Act Section 401 Certification Rule, 85

Fed. Reg. 42,210 (July 13, 2020) (the Rule). The Rule restores the federal-State balance by clarifying the limits section 401 places on State action. Specifically, the Rule gives effect to Congress's decision to limit the scope of State review to water quality determinations and the duration of that review to a reasonable timeframe not to exceed one year.

Plaintiffs—South Carolina Coastal Conservation League and other environmental organizations—challenge the Rule as violating the Administrative Procedure Act (APA) and the CWA by unlawfully restricting the scope of section 401 certification review, Compl. ¶¶ 162–167, and the permissible section 401 conditions, Compl. ¶¶ 168–173. Plaintiffs also allege APA and CWA violations based on restricting public participation, Compl. ¶¶ 174–184, restricting section 401 certification procedures, Compl. ¶¶ 185–192, imposing an unlawful federal agency veto of certification decisions, Compl. ¶¶ 193–200, and limiting when section 401 applies, Compl. ¶¶ 201–207. Finally, Plaintiffs allege that the Rule is arbitrary and capricious in violation of the APA. Compl. ¶¶ 208–215.

The Coalition moves to intervene in this action to defend against Plaintiffs' challenge. Intervention will allow the Coalition to defend its unique and critical interests in the Rule and will aid the Court in understanding the purpose of the Rule, as well as the merits and implications of the Plaintiffs' claims and requested relief. The Coalition's motion is timely. The Coalition has an obvious interest in the Rule, which may be impaired if the Plaintiffs prevail. And the other parties to the case cannot adequately protect the Coalition's interests. The motion should be granted.

## II.     STATEMENT OF INTERESTS

### A.     API

API is a nationwide, nonprofit trade association that represents all facets of the natural

gas and oil industry, which supports 10.3 million U.S. jobs and nearly 8% of the U.S. economy.

Rorick Decl. ¶ 3. API's 600-plus member companies include large integrated companies, as well

as exploration and production, refining, marketing, pipeline, and marine businesses, and service

and supply firms. *Id.* API was formed in 1919 as a standards-setting organization, and API

developed more than 700 standards to enhance operational and environmental safety, efficiency,

and sustainability. *Id.*

API members engage in exploration, production, and construction projects that routinely

involve both State and federal water permitting that require section 401 certification. *Id.* ¶ 4.

API's members have a significant interest in the Rule's provisions clarifying the timeframes for

certification, the scope of certification review and conditions, and the related certification

requirements and procedures. To protect these significant interests, API joined two comment

letters submitted by the Natural Gas Council and the Domestic Energy Producers Alliance in

response to the EPA's August 22, 2019, proposed rule.[1]

### B.     INGAA

INGAA is a non-profit trade association representing 26 of the interstate natural gas

transmission pipeline companies operating in the U.S. INGAA's members, which constitute

---

[1] Natural Gas Council, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0852, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0852 (Natural Gas Council Comments); Domestic Energy Producers Alliance, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0935, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0935.

approximately two-thirds of the interstate natural gas pipeline industry, operate a network of approximately 200,000 miles of pipelines. Dreskin Decl. ¶ 3. The interstate natural gas pipeline network serves as an indispensable link between natural gas producers and the American homes and businesses that use the fuel for heating, cooking, generating electricity, and manufacturing a wide variety of goods. *Id.* Natural gas plays a prominent role in the nation's energy mix, and interstate natural gas pipelines are an integral part of the energy infrastructure. *Id.* ¶¶ 3–4. U.S. natural gas production likely will increase to 130 billion cubic feet per day by 2035, spurred by growing markets, if available supplies are developed. Investment in new oil and gas infrastructure likely will total $791 billion from 2018 through 2035, averaging $44 billion per year. *Id.* ¶ 4. Natural gas also will serve as a backstop to help firm up variable resources, like wind and solar, which are expected to grow. *Id.* This increased demand for natural gas creates a need for thousands of miles of new and replacement pipelines to meet market demand or to modernize existing pipeline facilities. *Id.*

      INGAA members routinely utilize the CWA section 401 process. First, due to the linear nature of pipelines, pipeline construction and maintenance often unavoidably involves crossing wetlands and streams, which require permitting under CWA section 404. *Id.* ¶¶ 5–6. Section 401 prohibits the U.S. Army Corps of Engineers (Corps) from issuing a section 404 permit until the authorized state or tribe provides a certification or waives certification. *Id.* ¶ 6. Second, to construct and operate an interstate pipeline, INGAA members must obtain from the Federal Energy Regulatory Commission (FERC) a certificate of "public convenience and necessity" based on demonstrated need. *See* 15 U.S.C. § 717f(c)(1)(A); Dreskin Decl. ¶ 5. Where a proposed pipeline project may result in a discharge into waters of the United States, section 401

certification or waiver is required before FERC authorizes construction resulting in the discharge. Dreskin Decl. ¶¶ 5–6.

Coalition members thus have a significant interest in the efficient operation of the section 401 certification process. Interstate natural gas pipeline construction and maintenance activities are typically conducted on tight schedules designed to ensure the safety, security, and reliability of the natural gas pipeline network, and to meet the growing demands of natural gas consumers, which makes the predictability and efficiency of the section 401 process critical. *Id.* ¶ 21. To protect these interests, INGAA joined the Natural Gas Council comment letter (a group which represents all segments of the natural gas value chain from the wellhead to the burnertip) and also filed a separate, extensive comment letter in response to the EPA's August 22, 2019, proposed rule.[2]

## III.    ARGUMENT

### A.    The Coalition Is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court *must permit* anyone to intervene" who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). The Fourth Circuit recognizes that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with

---

[2] Natural Gas Council Comments; INGAA, Comments on EPA's Proposal to Update Regulations on Clean Water Act Section 401 Water Quality Certification, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0918, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0918.

efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The Coalition satisfies each of the requirements for intervention under Rule 24(a)(2).

### 1.     The Motion to Intervene Is Timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances" of the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). In making that determination, courts are "obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion". *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).

Here, each of these considerations shows the Coalition's motion is timely. The Coalition filed its motion as early as practicable, and before any meaningful proceedings have occurred. The Defendants have filed no responsive pleading, no party has filed a substantive motion, and the initial case management conference has not yet been scheduled. And significantly, the merits of the case may only be decided on the administrative record, which has not yet been submitted to the Court. Granting intervention will not cause prejudice to the other parties, and no unreasonable delay will result. *See Thomas v. Andino*, No. 3:20-CV-01552-JMC, 2020 WL 2306615, at *3 (D.S.C. May 8, 2020) (finding motion to intervene timely where it was filed before defendants entered their appearance or filed any responsive pleadings); *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018) ("[The] motions to intervene are timely, as they were filed within twenty-two days of the filing of the initial complaint. No discovery has been conducted or dispositive motions decided."). Under these circumstances, the Coalition's motion is timely.

### 2.     The Coalition Has a Direct and Recognized Interest in the Final Rule.

To intervene as of right, a movant must have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The movant must demonstrate that its interest is "direct and substantial." *Matter of Richman*, 104 F.3d 654, 659 (4th Cir. 1997).

The Coalition's members have a significant interest in the Rule that is protectable under law. Section 401, by its own terms, limits the scope and duration of State reviews. The Rule seeks to clarify and enforce these limits, which will benefit the Coalition's members, who regularly rely on federal permits and licenses that require certification. Rorick Decl. ¶ 4; Dreskin Decl. ¶¶ 3–6. Absent the Rule, States may continue the practice of denying or delaying action on certification requests in violation of these limits, which clearly impairs Coalition members' legally protectable interest in the associated federal permits and licenses. *See*, *e.g.*, 33 U.S.C. § 1344; 15 U.S.C. § 717f(c)(1)(A).

Courts regularly recognize that an interest in a federal permit satisfies the significant protectable interest requirement. *See, e.g., Driftless Area Land Conservancy v. Huebsch*, No. 20-1350, 2020 WL 4592147, at *3 (7th Cir. Aug. 11, 2020); *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc); *Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 257 (S.D. W.Va. 2007) (granting intervention to Corps permit holders in litigation challenging the permit); *Back Bay Restoration Found., Ltd. v. United States Army Corps of Engineers*, No. 2:19-CV-323, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019) (granting intervention where litigation could affect a private entity's "Department of Army permits and its development projects"); *Ga. River Network v. U.S. Army Corps of Eng'rs*, 334 F. Supp. 2d 1329

7

(N.D. Ga. 2003) (allowing Corps permit holder to intervene in NEPA suit challenging the permit).

Here, the Plaintiffs are not directly challenging any federal permit or license or any State certification, but are challenging EPA's ground rules for the section 401 process that will impact projects developed by members of the Coalition, and that interest is sufficient for intervention as of right. Courts routinely find the interest requirement satisfied where the litigation involves a challenge to a regulatory regime that the intervenor routinely engages. For example, a municipal association was permitted to intervene where its members held National Pollutant Discharge Elimination System permits which were subject to the strategy established by the total maximum daily load under review. *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98, 105 (M.D. Pa. 2011). Similarly, timber purchaser associations had a right to intervene based on their members' contracts that would have been affected by litigation challenging U.S. Forest Service practices for managing national forests. *Sierra Club v. Espy*, 18 F.3d 1202, 1203–04, 1207 (5th Cir. 1994). Motor vehicle common carriers likewise had a right to intervene where the litigation risked setting aside a regulatory scheme that "directly protects their economic interests." *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977). And transportation trade associations were granted intervention in litigation concerning federal approval of regional transportation plans where the associations' members had existing contracts that would be affected by the case and had contributed to the transportation plans at issue. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (explaining that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest" for purposes of intervention.).

Indeed, Courts regularly allow trade associations to intervene when the validity of a regulation that affects their members' economic interests is at stake. *N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (concluding trade associations have "a sufficient interest to permit [them] to intervene since the validity of a regulation from which [their] members benefit is challenged"); *California v. Bureau of Land Mgmt.*, No. 18-cv-00521, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018) (granting API motion to intervene in litigation challenging rescission of a regulation concerning hydraulic fracturing on public and tribal lands); *Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 204 F.R.D. 301, 306 (S.D. W.Va. 2001) (allowing intervention in CWA and National Environmental Policy Act case by "an association composed of members of the regulated industry"); *see also Feller*, 802 F.2d at 726 (granting intervention as of right to apple pickers in litigation challenging Department of Labor temporary foreign worker program).

Under this well-settled precedent, litigation over the Rule is likely to affect the Coalition's interests. The Coalition's members regularly must satisfy section 401 to obtain federal authorizations for construction and maintenance projects. Rorick Decl. ¶ 4; Dreskin Decl. ¶¶ 5–6. And they have experienced significant delays and financial harm because States have exceeded the statutory review period or denied certification on non-water quality grounds. Rorick Decl. ¶ 11; Dreskin Decl. ¶¶ 8–9. For example, a Coalition member submitted a certification request for a $683 million, 124-mile natural gas pipeline designed to connect natural gas production in Pennsylvania to demand in the northeastern markets. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. The New York State Department of Environmental Conservation (NYSDEC) requested additional information and deemed the request complete in December 2014. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. In April 2015, NYSDEC requested that the member withdraw

and resubmit its request to restart the waiver period. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. In April 2016, nearly three years after the project's initial request for certification, NYSDEC denied certification. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. The project's sponsor halted investment in the pipeline and cancelled the project in February 2020. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10.

Coalition members also have had projects cancelled or otherwise negatively affected by States' unlawful expansion of their review to include considerations unrelated to water quality. For example, in August 2020, the State of North Carolina denied certification for an API member's $468 million, 75-mile natural gas pipeline project on grounds that the purpose of the project was "unachievable" due to the "uncertainty" of completion of a different pipeline project even though FERC had already decided that public convenience and necessity required approval of the project. Rorick Decl. ¶ 14. Similarly, in November 2015, the Millennium Pipeline Company's request for certification for its 7.8-mile pipeline was denied, not on water quality grounds but because the State determined that FERC's environmental review failed to adequately assess potential downstream greenhouse gas emissions. Dreskin Decl. ¶ 11. Another example is the Atlantic Coast Pipeline, a $5.1 billion pipeline project proposed by an INGAA member that would transport gas produced in the Marcellus Shale region to the Mid-Atlantic region. *Id.* ¶ 13. In 2017, Virginia approved water quality certification of the project subject to conditions regulating activities in upland areas that may indirectly affect state waters, which reaches beyond the scope of federal CWA jurisdiction and the project's direct discharges into navigable waters. *Id.* Another INGAA member project was delayed as the result of the NYSDEC's decision to deny certification more than one year after the member submitted its certification request. *Id.* ¶ 12. FERC determined the State exceeded the statutory deadline and so waived certification. FERC's waiver decision is on appeal to the Second Circuit. *Id.* In a separate proceeding

involving the same pipeline, the Second Circuit determined that the certification denial failed for a different reason—that it lacked any rational connection between the facts found and choice made. *Id.*[3]

Given the significant ramifications for oil and gas pipeline projects from State violation of section 401's statutory limits, the Coalition's members have a significant interest in the procedures and substantive requirements of the Rule that correct these abuses. To protect that interest, the Coalition filed detailed comments on the proposed rule, which were part of the administrative record before the EPA when it adopted the Rule. Rorick Decl. ¶ 20; Dreskin Decl. ¶ 18. The Coalition's members thus have direct interests in protecting the Rule, which creates an efficient, transparent, and effective section 401 certification process.

The litigation's potential effect on these interests is imminent, not speculative or attenuated. A "remote economic interest" that is "too tangential to the core issues" of the litigation is insufficient for intervention as of right. *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 21 (S.D.W. Va. 2015). But that is not the case here. The Coalition's interest is much more closely tied to the issues presented in this litigation, because the Coalition's members regularly must engage the section 401 certification process. The Coalition's members have numerous projects for which they will soon request certification, which will be made under the Rule. Rorick Decl. ¶ 22; Dreskin Decl. ¶ 22. If this Court declares the Rule unlawful, the Coalition's members could face years of additional delays and substantial additional costs with respect to those projects, without any commensurate benefit to the aquatic environment. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. This connection is more than sufficient to support intervention.

---

[3] In August 2019, NYSDEC issued a second denial of the section 401 water quality certification. Dreskin Decl. ¶ 12. The pipeline appealed this decision to the Second Circuit; the court stayed the case, pending a decision on the FERC waiver decision. *Id.*

*Cf., e.g., Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 855 (4th Cir. 2001) (finding a group of unsecured creditors had sufficient interest to intervene in a debtor's litigation against the South Carolina Department of Health and Environmental Control to prevent the agency from closing its commercial hazardous waste landfill); *see also Fresno Cty. v. Andrus*, 622 F.2d 436, 437 (9th Cir. 1980) (concluding that an association of small farmers had a sufficient interest for intervention in litigation to enjoin the Secretary of the Interior from promulgating regulations governing excess land sales before an environmental impact statement was prepared); *Arakaki v. Cayetano,* 324 F.3d 1078, 1088 (9th Cir. 2003) (finding a significant protectable interest by a group of Native Hawaiians in litigation concerning the State's provision of benefits).

In sum, the Coalition has a substantial protectable interest in the Rule that is the object of this litigation, because its members regularly apply for section 401 certifications and stand to experience substantial additional cost, delay, and harm if Plaintiffs obtain the relief they seek.[4]

### 3.    The Coalition's Interests May Be Impaired or Impeded by the Disposition of this Litigation.

Courts in this circuit focus on the "practical disadvantage or impediment" that may result from litigation in determining intervention as of right. *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 121 (4th Cir. 1981). It is sufficient that the applicant's interests "may be practically impaired" by the disposition of the litigation. *Feller*, 802 F.2d at 731; *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir.

---

[4] Although the Coalition is not required to separately demonstrate standing to participate as defendant-intervenors, *see N.C. State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019) (not requiring intervenor-defendants to establish standing because the Fourth Circuit has not imposed such requirement), the Coalition's interests in the Rule, and the impairment the Coalition and its members would suffer if the plaintiffs prevail, easily satisfy any standing requirement, *see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001).

1992) (explaining that it is sufficient that the applicant's "legal interests may be affected or impaired[] as a practical matter by the disposition of the action." (internal quotation and citation omitted)).

An economic or business interest in the outcome of the litigation is also sufficient to warrant intervention. *Feller*, 802 F.2d at 730 (granting intervention as of right to apple pickers whose wages could be affected by litigation); *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (finding a protectable interest where the result of litigation will affect the level of competition movants face and thus the income they can expect to earn); *see also United States v. Albert Inv. Co*., 585 F.3d 1386, 1393 (10th Cir. 2009) ("threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest" to warrant intervention) (internal quotation marks and citation omitted).

Here, it is readily apparent that, if the Rule is found unlawful, the Coalition's members' interests could be substantially impaired or impeded. If Plaintiffs obtain a judgment declaring the Rule unlawful, Coalition members would not realize the benefits of the Rule and could face years of additional delays and substantial additional costs, without any commensurate benefit to the aquatic environment. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. States would be able to continue to condition or deny certification for Coalition members' projects based on policy objections unrelated to water quality. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. Accordingly, many important activities associated with oil pipelines, natural gas pipelines, and natural gas liquids pipelines may be delayed or otherwise encumbered if the Rule is declared unlawful and States and return to their previous practices of improperly denying or delaying certification.

4.    **The Current Parties Do Not Adequately Represent the Coalition's Interests.**

A proposed intervenor's burden of showing inadequacy of representation is a "'minimal'" one. *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (citation omitted). As the Supreme Court has explained, "the applicant [need only] show[] that representation of [its] interest[s] [by existing parties] *'may be'* inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also Teague*, 931 F.2d at 262.

Courts in this circuit and elsewhere routinely recognize that private parties and the federal government do not necessarily share the same interests even when they both support a given government action. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (explaining that Sierra Club's interests were not adequately protected by the state government which had an interest in arguing a regulation did not violate the Commerce Clause but that the interests may diverge over issues such as severability, balance of the hardships, and public interest). Even when the government's objectives are "closely aligned" with those of a private entity, the government does not adequately protect a private non-party's economic interests. *Defenders of Wildlife v. N.C. Dep't of Trans.*, 281 F.R.D. 264, 268–69 (E.D.N.C. 2012); *see also Back Bay Restoration Found., Ltd. v. United States Army Corps of Engineers*, No. 2:19-CV-323, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019) ("courts have accepted the distinction between a government entity's interests in representing the public and private economic interests in the subject matter of the lawsuit when granting rule 24(a)(2) intervention."). Courts across the country have taken the same view. *See*, *e.g.*, *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025-26 (8th Cir. 2003) (in suit challenging Corps policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors—downstream users—because Corps was required to balance the interests of the upstream and downstream users); *Georgia v. U.S.*

*Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("[A] federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of an entity with an economic interest[] in the use of that resource.") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity . . . .").

EPA's institutional considerations make it ill-suited to adequately represent the Coalition's interests. Although EPA has an interest in providing regulatory clarity to industry, as well as States and tribes, it has to balance that interest against its myriad other interests including environmental protection, its institutional reputation, and its own authority as the regulator tasked with implementing the CWA and as a permitting authority in certain situations. These considerations mean that the Coalition and EPA have different interests, particularly when it comes to matters of EPA's authority, which the Rule undoubtedly implicates. Further, EPA has no particular interest in defending the Coalition members' financial interests in their federal permit and license applications.

The interests of Coalition members and EPA also diverge due to their different roles in the section 401 certification process. Section 401 provides that "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates." 33 U.S.C. § 1341(a)(1). And "[n]o license or permit shall be granted until the certification required by this section has been obtained or has been waived." *Id.* Applicants, including Coalition members, thus have a concrete interest in ensuring that States and tribes exercise their certification authority expeditiously so that the appropriate federal

15

agency can grant their permit or license application. EPA's role is markedly different. In some cases (e.g., where a tribe lacks authority to give certification), EPA itself is the certifying authority. *Id.* And when a discharge in one State may affect the water quality of another State, section 401 requires EPA to give to the permitting or licensing authority its opinion on certification. *Id.* § 1341(a)(2). So EPA's section 401 duties can put it in direct opposition to Coalition member's interests. That statutory role will almost certainly affect the way in which EPA defends the Rule, which provides the rules of the road for certifications both when made by EPA and when made by States or tribes. EPA cannot be expected to fully defend the Coalition's financial interests in permit and license approval under such conditions.

The number of issues involved in the Rule further indicates that the Coalition and the Federal Defendants will present different arguments and place different emphasis on different aspects of the Rule. The Rule addresses a number of certification issues, including the permissible scope of section 401 review, the timeframe for certification, when certification is required, and pre-filing meeting requests, to name a few. This is not a rule that defines a single statutory term where there are a relatively narrow set of issues, and thus, a narrow set of arguments that will likely be made in defense of the Rule. *See* Order Denying Mots. to Intervene, *California v. Wheeler*, No. 3:20-cv-03005 (N.D. Cal. Aug. 13, 2020) (Dkt. 200) (denying intervention because there was no indication that proposed intervenors' interests would be inadequately represented and a preliminary injunction had already been granted). Instead, the Coalition and the Federal Defendants will present different arguments not only on the substance of some of these issues but will also approach differently questions about the relative importance of the various aspects of the Rule.

In particular, the government may devote more time and energy to advocating broad legal principles at the expense of other arguments in defense of the Rule that are more important in the Coalition's view. For example, this case presents questions about the extent to which a federal agency may interpret ambiguous statutes under *Chevron, U.S.A. Inc., v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984). In the Rule, EPA correctly concludes that the Supreme Court's majority opinion in *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700 (1994) ("*PUD No. 1*"), does not deprive EPA of its authority to interpret ambiguous terms in the statute regarding the scope of authority provided in subsections 401(a) and 401(d). *See* 85 Fed. Reg. at 42,224–25, 42,229 (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967 (2005)). The Coalition agrees that given the unique aspects of the Supreme Court's *PUD No. 1* decision, *see* 85 Fed. Reg. 42,233–34, it does not preclude EPA's interpretation of section 401. The government's defense of the Rule, however, may rely on and advocate for a broader application of the principles espoused in *Brand X*, which could conflict with the Coalition's position.

The Coalition also will make arguments that are uniquely within its area of expertise given its members' substantial experience applying for section 401 certifications. The proposed intervenor's expertise in a particular area that is not shared by the defendant is a factor courts consider in granting intervention. *See North Carolina v. Alcoa Power Generating, Inc.*, No. 5:13-CV-633-BO, 2013 WL 12177042, at *1 (E.D.N.C. Oct. 29, 2013) (noting in granting permissive intervention that movant's experience may assist the court); *Verizon Pa., Inc. v. Pa. Pub. Util. Comm'n.*, No. 08-CV-3436, 2008 WL 11374369, at *2 (E.D. Pa. Oct. 23, 2008) (granting intervention as of right where the Pennsylvania PUC lacked the intervenor's technical expertise). Here, the Coalition will be able to enhance the Court's understanding of the section 401

certification process from the perspective of permit applicants. Rorick Decl. ¶ 25; Dreskin Decl. ¶ 25. The Coalition will be able to explain the importance of an efficient certification process and how businesses, consumers, and employees are affected when States exercise their certification authority improperly by, for example, failing to comply with the statutory timeframe or blocking infrastructure projects for reasons outside the scope of section 401. Rorick Decl. ¶ 25; Dreskin Decl. ¶ 25. The Federal Defendants do not have the experience or expertise to fully develop these arguments.

Further supporting intervention is the real risk that the Coalition and the Federal Defendants' interests will diverge even further during the course of litigation due to a change in administration or policy. A number of recent examples show that this is a real possibility. In 2018, the federal government abandoned its defense of the 2015 waters of the United States (WOTUS) Rule in litigation in the Southern District of Georgia and the Southern District of Texas when the new Administration initiated a rulemaking to revise the rule. *See* Fed. Defs.' Resp. to States' & to Private Party Pls.' Mots. for Summ. J., *Texas v. EPA*, No. 3:15-cv-00162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170); United States' Resp. to Pls.' & Intervenor Pls.' Mots. for Summ. J., *Georgia v. Wheeler*, No. 2:15-cv-00079-LGW-BWC (S.D. Ga. Oct. 10, 2018) (Dkt. 215). Similarly, courts have noted when granting intervention that an agency "may decide that the matter lacks sufficient general importance to justify" an appeal. *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004). Here, the upcoming presidential election presents the real possibility that the interests of a new administration will cause a change in the way the present case is litigated that departs significantly from the Coalition's interests. This possibility only further confirms that the Federal Defendants will not adequately represent the Coalition's substantial interest in the litigation.

**B.      Alternatively, the Coalition Should Be Granted Permissive Intervention.**

Although the Coalition is entitled to intervene as of right under Rule 24(a)(2), in the alternative, the Court should permit the Coalition to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may exercise its discretion to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). This Court has broad discretion to grant permissive intervention. *Id.*

"Among the factors a Court should consider in passing upon a motion for permissive intervention includes (1) the timeliness of the motion; (2) the presence of a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice the original parties." *S.C. Elec. & Gas Co. v. Whitfield*, No. 3:18-CV-01795-JMC, 2018 WL 3613932, at *2 (D.S.C. July 28, 2018) (internal citation and quotation omitted).

Permissive intervention is warranted here. Plaintiffs challenge the Rule and, if successful, the Coalition's interests would be substantially affected. The Coalition's defense would be based on the administrative record to be filed by Federal Defendants, present questions of law and fact in common with the underlying suit, and respond directly to Plaintiffs' claims. The Coalition represents the unique perspective of applicants for section 401 certifications that are required for federal CWA permits and other licenses. That interest is not shared by any other party in the suit. The Coalition's participation would thus aid the Court's understanding of the section 401 certification process, the problems that the Rule solves, and the potential impact on permit applicants if the Rule is declared unlawful. The Coalition is uniquely positioned to assist the Court in understanding the merits and implications of Plaintiffs' claims, and thereby assist in the equitable resolution of this action.

Finally, granting intervention will not delay the litigation. The Coalition's motion is timely and, if granted intervention, the Coalition expects to participate on the same schedule established for the existing parties.

### C.    The Coalition Should Be Allowed To File Its Answer After The Federal Defendants.

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Rule 24(c) may be satisfied by a motion to intervene, even without an accompanying pleading, when the motion provides sufficient information to apprise the court of the grounds for the motion. *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (allowing intervention without a pleading where the intervenor provided sufficient notice of its claims and no prejudice would result); *see also United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) ("we conclude that the statement of interest satisfies Rule 24(c) because it provides sufficient notice to the court and the parties of [movant's] interests."); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (when "the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal.").

Short of waiving the pleading requirement entirely, courts have also recognized that a pleading may be filed at a later time after the motion to intervene has been filed. *See Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996) (allowing proposed intervenor to file an answer three weeks and one day after the motion to intervene "where even the named defendants are not yet required to answer"); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1272 (S.D. Fla. 1989) (explaining that "[f]ailure to file an accompanying pleading . . . may be rectified by the later filing of such a pleading."); *see also Parker v. Morton*, No. 18-00234-KD-B, 2019

WL 1645207, at *5 (S.D. Ala. Apr. 16, 2019); *United States v. City of Hialeah*, 899 F. Supp.

603, 608 n.5 (S.D. Fla. 1994), *aff'd*, 140 F.3d 968 (11th Cir. 1998); *Gibraltar Mausoleum Corp.*

*v. Cedar Park Cemetery Ass'n*, No. 92 C 5228, 1993 WL 135454, at *4 (N.D. Ill. Apr. 29, 1993).

The circumstances warrant allowing the Coalition to file its pleading within a reasonable

time after the Federal Defendants file their pleading for at least two reasons. First, judicial

economy and efficiency support this approach. The Coalition is filing the present motion to

intervene at this early stage of the proceedings because, as demonstrated in this memorandum,

the Coalition has a substantial interest affected by the Rule and that such interest will not be

adequately represented by the existing parties. As it has done in filing this motion, the Coalition

intends to participate in this litigation as efficiently and expeditiously as possible. Although the

Coalition does not intend to stand on the Federal Defendants' pleading, allowing it to file after

the Federal Defendants will allow the Coalition to minimize duplication as much as possible

while still protecting its interests.

Second, principles of fairness counsel in favor of allowing the Coalition to file its

pleading after the Federal Defendants. The Coalition has proceeded as expeditiously as possible

in filing this motion and should not be placed in a worse position than any other intervenor

because it has filed expeditiously. Further, allowing the Coalition to file its answer after the

Federal Defendants will not impair this Court's ability to decide this motion because the

Coalition has provided ample support for intervention, which is sufficient standing alone for the

court to grant intervention. *Spring Constr. Co.*, 614 F.2d at 377. It also will not prejudice any

other party since the Plaintiffs will not receive the Federal Defendants' pleading until September

21, 2020. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d 261, 265

(D.P.R. 2017) (recognizing "discretion to allow a motion to intervene filed without an accompanying pleading where its absence is not prejudicial to a party.").

## IV.    CONCLUSION

The Coalition respectfully requests that this Court grant its Motion to Intervene as of Right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, the Coalition respectfully requests that this Court grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

Respectfully submitted this the 11th day of September 2020.

**HUNTON ANDREWS KURTH LLP**

Deidre G. Duncan*
2200 Pennsylvania Avenue, NW
Washington, D.C., 20037
Telephone: (202) 955-1919
Email: dduncan@hunton.com

George P. Sibley, III*
951 E. Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8200
Email: gsibley@hunton.com

*Pro Hac Vice application forthcoming

/s/  Ryan G. Rich
D.S.C. Bar No. 11094
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
Telephone: (704) 378-4778
Email: rrich@hunton.com

*Attorneys for Proposed Intervenor-Defendants American Petroleum Institute and Interstate Natural Gas Association of America*