**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, in his official capacity as the Administrator of the United States Environmental Protection Agency, <br><br> Defendants, <br><br> AMERICAN PETROLEUM INSTITUTE, *et al*., <br><br> Defendant-Intervenors, <br><br> NATIONAL HYDROPOWER ASSOCIATION, <br><br> Defendant-Intervenors, <br><br> STATE OF LOUISIANA, *et al*., <br><br> Defendant-Intervenors. | Civil Action No. 2:20-cv-03062-BHH |

**DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR**

Defendants the United States Environmental Protection Agency and Michael S. Regan, in

his official capacity as the Administrator of the United States Environmental Protection Agency

(collectively, "EPA"), by and through their counsel, respectfully request that the Court remand,

without vacatur, EPA's Section 401 Certification Rule that revised the implementing regulations

1

for state certification of federal licenses and permits that may result in any discharge into waters

of the United States pursuant to section 401 of the Clean Water Act ("CWA"), 33 U.S.C. § 1341.

Remand is appropriate here because EPA has announced its intention to reconsider and revise the

Certification Rule. *Notice of Intention to Reconsider and Revise the Clean Water Act Section 401*

*Certification Rule*, 86 Fed. Reg. 29,541 (June 2, 2021) ("Notice"). EPA has "determined that it

will reconsider and propose revisions to the rule through a new rulemaking effort." Declaration

of John Goodin ("Goodin Decl.") ¶ 9. "EPA seeks to revise the rule in a manner that promotes

efficiency and certainty in the certification process, that is well-informed by stakeholder input on

the rule's substantive and procedural components, and that is consistent with the cooperative

federalism principles central to section 401." *Id.* ¶ 13.

Defendants have conferred with the parties regarding this motion. Plaintiffs plan to

oppose this motion. Defendant-Intervenors do not object to the motion based on counsel for

Defendants' description, but reserve the right to file a response if they think one is necessary,

after seeing the motion.

## BACKGROUND

On July 13, 2020, EPA's final rule, *Clean Water Act Section 401 Certification Rule*, was

published. 85 Fed. Reg. 42,210 (the "Certification Rule" or the "Rule"). The Certification Rule

became effective on September 11, 2020. On January 20, 2021, President Biden issued

Executive Order 13,990, *Protecting Public Health and the Environment and Restoring Science to*

*Tackle the Climate Crisis*. 86 Fed. Reg. 7,037 (Jan. 25, 2021). Executive Order 13,990 stated that

it is the policy of the new administration:

> to listen to the science; to improve public health and protect our environment; to
> ensure access to clean air and water; to limit exposure to dangerous chemicals and
> pesticides; to hold polluters accountable, including those who disproportionately
> harm communities of color and low-income communities; to reduce greenhouse

gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id*. at 7,037. Executive Order 13,990 directs federal agencies to "immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives, and to immediately commence work to confront the climate crisis." *Id*. The Certification Rule was specifically listed in a subsequent White House Statement as one of the agency actions to be reviewed pursuant to the Executive Order for potential suspension, revision or rescission.[1]

Plaintiffs filed this case on August 26, 2020, alleging that EPA violated the Administrative Procedure Act because the Certification Rule is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, [ ] arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." Compl. ¶¶ 167, 173, 184, 192 (citing 5 U.S.C. §§ 706(2)(C), 706(2)(A)) (Dkt. No. 1). On January 8, 2021, EPA moved for summary judgment. Dkt. No. 46. Pursuant to the parties' stipulation, the Court vacated the briefing schedule and held the case in abeyance until June 4, 2021, to allow EPA time to determine a course of action with respect to the Certification Rule in light of the Executive Order. Dkt. No. 61. The Court also dismissed EPA's pending Motion for Summary Judgment without prejudice to refile. *Id*. at 2.

---

[1] Fact Sheet: List of Agency Actions for Review, available at https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-ofagency-actions-for-review/ (last accessed on May 20, 2021).

EPA has completed its initial review of the Certification Rule and determined that it will undertake a new rulemaking effort to propose revisions due to substantial concerns with the existing Rule. *Notice*, 86 Fed. Reg. 29,541 (June 2, 2021). As explained in the Notice and Goodin Declaration, EPA is reconsidering numerous topics in the Certification Rule. 86 Fed. Reg. at 29,542-44; Goodin Decl. ¶ 15. The specific topics that EPA has committed to reconsidering as part of that process include:

- the utility of the pre-filing meeting process to date, including whether the pre-filing meeting request component of the Rule has improved or increased early stakeholder engagement, whether the minimum 30 day timeframe should be shortened in certain instances (*e.g.*, where a certifying authority declines to hold a pre-filing meeting), and how certifying authorities have approached pre-filing meeting requests and meetings to date;

- the sufficiency of the elements described in 40 C.F.R. § 121.5(b) and (c), and whether stakeholders have experienced any process improvements or deficiencies by having a single defined list of required certification request components applicable to all certification actions;

- the process for determining and modifying the "reasonable period of time," including whether additional factors should be considered by federal agencies when setting the "reasonable period of time," whether other stakeholders besides federal agencies have a role in defining and extending the reasonable period of time, and any implementation challenges or improvements identified through application of the Rule's requirements for the reasonable period of time;

- the Rule's interpretation of the scope of certification and certification conditions, and the definition of "water quality requirements" as it relates to the statutory phrase "other appropriate requirements of State law," including whether the Agency should revise its interpretation of scope to include potential impacts to water quality not only from the "discharge" but also from the "activity as a whole" consistent with Supreme Court case law, whether the Agency should revise its interpretation of "other appropriate requirements of State law," and whether the Agency should revise its interpretation of scope of certification based on implementation challenges or improvements identified through the application of the newly defined scope of certification;

- the certification action process steps, including whether there is any utility in requiring specific components and information for certifications with conditions and denials; whether it is appropriate for federal agencies to review certifying authority actions for consistency with procedural requirements or any other purpose, and if so, whether there should be greater certifying authority engagement in the federal agency review process including an opportunity to respond to and cure any deficiencies; whether federal agencies should be able to deem a certification or conditions as "waived," and whether, and under what circumstances, federal agencies may reject state conditions;

- enforcement of CWA Section 401, including the roles of federal agencies and certifying authorities in enforcing certification conditions; whether the statutory language in CWA Section 401 supports certifying authority enforcement of certification conditions under federal law; whether the CWA citizen suit provision

applies to Section 401; and the Rule's interpretation of a certifying authority's inspection opportunities;

- modifications and "reopeners," including whether the statutory language in CWA Section 401 supports modification of certifications or "reopeners," the utility of modifications (*e.g.*, specific circumstances that may warrant modifications or "reopeners"), and whether there are alternate solutions to the issues that could be addressed by certification modifications or "reopeners" that can be accomplished through the federal licensing or permitting process;

- the neighboring jurisdiction process, including whether the Agency should elaborate in regulatory text or preamble on considerations informing its analysis under CWA Section 401(a)(2), whether the Agency's decision to make a determination under CWA Section 401(a)(2) is wholly discretionary, and whether the Agency should provide further guidance on the Section 401(a)(2) process that occurs after EPA makes a "may affect" determination;

- application of the Certification Rule, including impacts of the Rule on processing certification requests, impacts of the Rule on certification decisions, whether any major projects are anticipated in the next few years that could benefit from or be encumbered by the Certification Rule's procedural requirements;

- existing state CWA Section 401 procedures, including whether the Agency should consider the extent to which any revised rule might conflict with existing state CWA Section 401 procedures and place a burden on those states to revise rules in the future; and

- facilitation of implementation of any rule revisions, including whether, given the relationship between federal provisions and state processes for water quality certification, EPA should consider specific implementation timeframes or effective dates to allow for adoption and integration of water quality provisions at the state level, and whether concomitant regulatory changes should be proposed and finalized simultaneously by relevant federal agencies (*e.g.*, the United States Army Corps of Engineers and the Federal Energy Regulatory Commission) so that implementation of revised water quality certification provisions would be more effectively coordinated and would avoid circumstances where regulations could be interpreted as inconsistent with one another.

86 Fed. Reg. at 29,542-44; Goodin Decl. ¶ 15. EPA is conducting initial stakeholder outreach by taking written input through a public docket that will be open until August 2, 2021, 60 days after publication of the Notice in the Federal Register. 86 Fed. Reg. at 29,541. After considering public input and information provided during stakeholder meetings, EPA will draft new regulatory language and supporting documents and submit the draft rule to the Office of Management and Budget ("OMB"). Goodin Decl. ¶¶ 20-22. EPA expects the proposed rule detailing revisions to the Certification Rule will be published in the Federal Register in Spring 2022, which will initiate a public comment period. *Id.* ¶ 23. Following the public comment period on the proposed rule, EPA plans to review comments and other input, develop the final rule, and submit it to OMB for interagency review. *Id.* ¶¶ 24-26. EPA expects to sign a final rule in Spring 2023. *Id.* ¶ 27.

**STANDARD OF REVIEW FOR VOLUNTARY REMAND**

"[A]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Friends of DeReef Park v. Nat'l Park Serv.*, No. 13-cv-03453-DCN, 2015 WL 12807800, at *11 (D.S.C. May 27, 2015) (quoting *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)). To that end, "when federal agencies take erroneous or unlawful action, courts generally should not stand in the way of the agencies' remediation of their own mistakes." *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007).

"[A]n agency may file a motion for voluntary remand 'without confessing error, to reconsider its previous position,' when its action is before a federal district court for review." *Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 18-cv-961-PWG, 2019 WL 5964526, at *2 (D. Md. Oct. 18, 2019) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 215 (4th Cir. 2009)). A remand is "generally required" if "intervening events outside of the agency's control" "affect the validity of the agency action." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). But "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Id*. at 1029. Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (citation omitted).

**ARGUMENT**

When determining whether to grant a motion for voluntary remand courts consider whether: (1) the agency has articulated a sufficient rationale for "reconsider[ing] its previous

position," *Ohio Valley Envtl. Coal.*, 556 F.3d at 215 (citation omitted), such as identifying

"substantial and legitimate" concerns in support of remand, *SKF*, 254 F.3d at 1029; (2) remand

supports "judicial economy," *Friends of DeReef Park v. Nat'l Park Serv.*, No. 13-cv-03453-

DCN, 2014 WL 6969680, at *2 (D.S.C. Dec. 9, 2014); and (3) voluntary remand would not

cause "undue prejudice" to the parties, *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C.

2015). Here, the balance of all three factors weighs in favor of remand.

  **First**, voluntary remand is appropriate because EPA has identified "substantial and

legitimate concerns" with the Certification Rule and has publicly announced its intention to

reconsider and revise the Rule. *SKF*, 254 F.3d at 1029 ("[I]f the agency's concern [with the

challenged action] is substantial and legitimate, a remand is usually appropriate."); *Friends of*

*DeReef Park*, 2014 WL 6969680, at *3 (same). Specifically, EPA has identified "substantial

concerns with a number of provisions of the 401 Certification Rule that relate to cooperative

federalism principles and CWA Section 401's goal of ensuring that states are empowered to

protect their water quality." 86 Fed. Reg. at 29,542. EPA also has substantial concerns about

whether the Certification Rule "constrains what states and Tribes can require in certification

requests, potentially limiting state and tribal ability to get information they may need before the

401 review process begins." *Id.* at 29,543. Likewise, EPA "is concerned that the rule does not

allow state and tribal authorities a sufficient role in setting the timeline for reviewing

certification requests and limits the factors that federal agencies may use to determine the

reasonable period of time." *Id*. EPA is also "concerned that the rule's narrow scope of

certification and conditions may prevent state and tribal authorities from adequately protecting

their water quality." *Id*. And EPA "is concerned that a federal agency's review may result in a

state or tribe's certification or conditions being permanently waived as a result of

nonsubstantive and easily fixed procedural concerns identified by the federal agency [and] that

the rule's prohibition of modifications may limit the flexibility of certifications and permits to

adapt to changing circumstances." *Id*. These concerns mirror many of Plaintiffs' allegations.

*See* Compl. ¶¶ 163-199.

Courts have granted remand in similar situations. For example, in *SKF USA Inc. v.

United States*, the Federal Circuit found a remand to the Department of Commerce appropriate

in light of the agency's change in policy. 254 F.3d at 1025, 1030. Likewise, in *FBME Bank Ltd.

v. Lew*, the District Court for the District of Columbia remanded a rulemaking to the

Department of the Treasury to allow the agency to address "serious 'procedural concerns'"

with the rule, including "potential inadequacies in the notice-and-comment process as well as

[the agency's] seeming failure to consider significant, obvious, and viable alternatives." 142 F.

Supp. 3d at 73. And in *Friends of DeReef Park v. National Park Service*, the District Court for

the District of South Carolina granted voluntary remand after the plaintiff had filed a summary

judgment motion based on the National Park Service's statement that it was "unable to

confirm" whether the challenged agency action "comport[ed] with the NEPA." 2014 WL

6969680, at *2.

A confession of error is not necessary for voluntary remand so long as the agency is

committed to reconsidering its decision.  *SKF*, 254 F.3d at 1029. For example, remand may be

appropriate if an agency "wishe[s] to consider further the governing statute, or the procedures

that were followed," or if an agency has "doubts about the correctness of its decision or that

decision's relationship to the agency's other policies."  *Id.*; *see also Limnia, Inc. v. U.S. Dep't of

Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) (an agency does not need to "confess error or

impropriety in order to obtain a voluntary remand" so long as it has "profess[ed] [an] intention to

reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge"). That standard is met here, as EPA has made clear that it intends to reconsider and revise the Certification Rule to address "substantial concerns" associated with the Rule. 86 Fed. Reg. at 29,542; Goodin Decl. ¶ 14. Along with receiving public input through a docket, EPA has held a series of webinar-based listening sessions to solicit stakeholder feedback on potential approaches to revise the Certification Rule. *Notice*, 86 Fed. Reg. at 29,544; Goodin Decl. ¶ 17.

In sum, "an agency must be allowed to assess 'the wisdom of its policy on a continuing basis.'" *Ohio Valley Envtl. Coal.*, 556 F.3d at 215 (citation omitted). EPA's actions are consistent with that principle, and this Court "should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004).

**Second**, granting remand here is in the interest of judicial economy. "Remand has the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.'" *Util. Solid Waste*, 901 F.3d at 436 (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). Here, allowing EPA to reconsider its decision made during the prior Administration—including the legal basis and policy effects of the Rule—and address its substantial concerns with the Rule through the administrative process will preserve this Court's and the parties' resources. *See FBME Bank*, 142 F. Supp. 3d at 74; *see also B.J. Alan Co. v. ICC*, 897 F.2d 561, 562-63 n.1 (D.C. Cir. 1990) ("[A]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts." (quoting *Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978))). Continuing to litigate the very same issues that EPA is currently reconsidering "would be

inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of "scarce judicial resources,"

*Friends of DeReef Park*, 2014 WL 6969680, at \*2.

In addition, continuing to litigate this case would interfere with EPA's ongoing

reconsideration process by forcing the Agency to structure its administrative process around

pending litigation, rather than the Agency's priorities and expertise. *See Am Forest Res. Council*

*v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (noting that because agency did "not wish to

defend" action, "forcing it to litigate the merits would needlessly waste not only the agency's

resources but also time that could instead be spent correcting the rule's deficiencies"), *aff'd*, 601

F. App'x 1 (D.C. Cir. 2015); *cf. Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465

(4th Cir. 1999) (agencies have an "interest in crystallizing [their] policy before that policy is

subject to review" (citation omitted)).

**Third**, any prejudice Plaintiffs may suffer due to a remand without vacatur would be

limited here because EPA has committed to reconsidering the Certification Rule to ensure that

Clean Water Act Section 401 is implemented in a manner consistent with the policies set forth in

Executive Order 13,990, many of which implicate the same concerns that Plaintiffs have raised

in this litigation. *See* 86 Fed. Reg. at 7,037. As noted above, EPA is considering revising

provisions in the Certification Rule related to many of the issues raised in this case:

- pre-filing meeting requests, 86 Fed. Reg. at 29,543;

- certification requests, 86 Fed. Reg. at 29,543; *see* Compl. ¶¶ 181-83, 190;

- reasonable period of time, 86 Fed. Reg. at 29,543; *see* Compl. ¶¶ 190;

- scope of certification, 86 Fed. Reg. at 29,543; *see* Compl. ¶¶ 163-66, 169-72, 202-206;

- certification actions and federal agency review, 86 Fed. Reg. at 29,543; *see* Compl. ¶¶ 194-99;

- certifying authority enforcement of certification conditions, 86 Fed. Reg. at 29,543; and

- certifying authority modification of certifications, 86 Fed. Reg. at 29,543.

Moreover, EPA has committed to ensuring that stakeholders and the public, including Plaintiffs and Defendant-Intervenors, have the opportunity to provide input to EPA in its reconsideration process. *Notice,* 86 Fed. Reg. at 29,544; Goodin Decl. ¶¶ 17, 18, 23.

A new rulemaking process will necessarily take time, but Plaintiffs cannot demonstrate undue prejudice from the time required under the Administrative Procedure Act to revise agency regulations. Plaintiffs are not directly regulated by the Certification Rule, which regulates the conduct of states, federal agencies, tribes and project proponents. Instead, Plaintiffs' alleged harms all flow from the implementation of the Certification Rule to specific future projects. *See* Compl. ¶ 35 (Plaintiffs "will lose out on information necessary to evaluate future development projects, inform [their] members, and advocate for plant protections to protect [their] members' interests"); Compl. ¶ 49 (Certification Rule "would limit the types of protections NRDC could seek from states").  But those harms are too speculative to overcome EPA's interest in remand, because they depend on a causal chain of events for potential future projects that may or may not occur, including (1) how a state may apply the Certification Rule to a specific project; (2) how a federal agency will apply certifications and conditions to a particular project; (3) how challenges to a state certification or condition would be adjudicated in a judicial or administrative proceedings; and (4) whether resolution of any challenges or implementation concerns would take longer than EPA's rulemaking process.

13

Thus, Plaintiffs' allegations are "too abstract and speculative to clearly outweigh [remand's] benefits," *Am. Forest Res. Council*, 946 F. Supp. 2d at 44, including allowing EPA to address its concerns with the Certification Rule, and potentially Plaintiffs' concerns as well, through the administrative process. Further, in the interim, Plaintiffs continue to have the option to challenge individual 401 certifications or federal actions taken pursuant to the Certification Rule as they arise, to the extent they may threaten imminent, concrete harm to a party or its members in the future. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (Plaintiff "will have ample opportunity later to bring [their] legal challenge" in the context of a future agency action applying the challenged plan "when harm is more imminent and more certain.").

Furthermore, any possible prejudice to plaintiffs caused by the Rule remaining in effect while EPA revises it pursuant to the required process of the Administrative Procedure Act should not be considered "undue" prejudice. During the rulemaking period, EPA is committed to providing technical assistance to all stakeholders regarding interpretation and implementation of the Certification Rule and working with its federal agency partners to address implementation concerns raised by Plaintiffs. Goodin Decl. ¶¶ 29-30. EPA's efforts may mitigate or eliminate alleged potential harms of concern to Plaintiffs.

## **CONCLUSION**

EPA has identified numerous concerns with the Certification Rule, many of which have been raised by Plaintiffs in this case, and the Agency has already begun reconsidering the Rule. Where an agency has committed to reconsidering the challenged action, the proper course is remand to allow the agency to address its concerns through the administrative process. *See Dudas*, 506 F.3d at 340. Rather than requiring EPA to litigate a rule that it is currently

reconsidering, Defendants respectfully ask the Court to remand the Certification Rule to the

Agency without vacatur.

Respectfully submitted this 1st day of July 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General


 /s/ *Vanessa R. Waldref*
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
ELISABETH H. CARTER (N.Y. Bar No. 5733274)
Elisabeth.Carter@usdoj.gov
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D.C. 20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Motion for Remand Without Vacatur to be filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

Date: July 1, 2021                                      *s/ Vanessa R. Waldref*

1